IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | Case No. 14-cr-292-PWG-1 |
| **SEAN AUDE GALLMAN** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses Defendant Sean Aude Gallman's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 180. Gallman's motion is based on "extraordinary and compelling reasons" due to an outbreak of COVID-19 at the Butner Federal Correctional Complex in North Carolina.[1] For the reasons discussed below, the motion is denied.

**Background**

Gallman filed this motion for compassionate release in the midst of the global COVID-19 pandemic. He argues, and the Government does not dispute, that his immunocompromised status due to a kidney transplant puts him at heightened risk for severe complications if he were to contract the disease. Government's Resp., ECF No. 189 at 15. Gallman has served four years of an eleven-year sentence after pleading guilty in 2016 to charges of mail fraud, conspiracy to commit mail and wire fraud, aggravated identity theft, and conspiracy to commit money laundering. *See* ECF No. 110. He is currently housed in a satellite unit at the Butner Complex, which, as a whole, has seen one of the largest COVID-19 outbreaks at Bureau of Prisons

---

[1] The motion is fully briefed. *See* ECF Nos. 180, 184, 188, 189, 192, 195, and 196. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018).

facilities. *See* COVID-19 Cases, https://www.bop.gov/coronavirus (last visited June 15, 2020). Gallman asks this Court to modify its judgment to allow him to serve the remainder of his sentence on home confinement. ECF No. 184 at 16.

## Discussion

### I. Waiver of Potential Disqualification

Before turning to the merits of Gallman's petition, I first must address the issue of potential disqualification. As described further below, Gallman filed, or attempted to file, false financial documents from prison beginning in November 2017 and continuing through March 2019. ECF No. 188 at 2–5. Gallman sent the documents to the IRS, this Court, and two county clerks in North Carolina. *See* ECF Nos. 162, 163, 167, 169, 170, 191. Several of the documents named me in connection with Gallman's finances. *Id.* For instance, a "UCC Financing Statement Amendment" purported to place a $100 million lien on me as a Judge of this Court. Ex. C, ECF No. 191. Another was an Internal Revenue Service Form 1099-OID in which Gallman claimed to be withholding $100 million in taxes on my behalf. ECF No. 162. In another frivolous IRS filing, Gallman listed me as his fiduciary. Ex. D at 2, ECF No. 191. Given Gallman's involvement of me and this Court in these filings, it is appropriate for me to evaluate whether I should be disqualified from hearing Gallman's motion.

When a federal judge's "impartiality might reasonably be questioned" under 28 U.S.C. § 455(a), the judge shall recuse himself. However, under 28 U.S.C. § 455(e), the parties may waive recusal under § 455(a) "provided it is preceded by a full disclosure on the record of the basis for disqualification unless the issue can be appropriately waived." Parties may not waive recusal when the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding" or when the judge has some other interest

in the litigation, such as previously serving as a lawyer in the matter or having a financial interest in the proceeding. 28 U.S.C. § 455(b), (e).

In this case, the parties filed a joint waiver of any disqualification, providing a full basis for the disqualification under 28 U.S.C. § 455(e). ECF No. 188. Therefore the parties have adequately waived any disqualification under 28 U.S.C. § 455(a). As to the non-waivable bases for disqualification, I hold no personal bias or prejudice against any party, and do not otherwise have a relationship or financial interest in this case that would disqualify me. 28 U.S.C. § 455(b). Therefore, I will not recuse myself from this case and proceed to the merits of the motion.

## II. Compassionate Release

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here Defendant requests a modification of his sentence for "compassionate release" under the First Step Act, as amended.

Congress originally enacted the First Step Act in 1984. *See* Pub. L. No. 98-473, 98 Stat. 2030 (1984). The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). However, the BOP rarely used this authority. Accordingly, in 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the court to act on a motion for compassionate release filed by a defendant. As revised, 18 U.S.C. § 3582(c)(1)(A) states as follows:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative

> rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). Gallman requests release based on "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Therefore, under the statute, I must do the following: (1) determine whether Gallman has fully exhausted all administrative remedies or 30 days have passed since the BOP received Gallman's request to bring a motion for release on his behalf; (2) determine whether "extraordinary and compelling reasons" warrant a sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing Commission; and (3) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." In regards to the second step of this framework, I join with the majority of courts that find that 18 U.S.C. § 3582(c)(1)(A)(i) as amended grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *7–9 (D. Md. May 22, 2020) (holding the same and collecting cases). While not binding, the Sentencing Commission's policy statements may provide useful guidance.

A. **Administrative Exhaustion**

A court may only consider a prisoner's motion for compassionate release if he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or if thirty days have passed since the warden of a defendant's facility received such a request. 18 U.S.C. § 3582(c)(1)(A). This condition is satisfied. The warden of the BOP facility received Gallman's request on May 4, 2020, and more than thirty days have since lapsed.

B. **Extraordinary and Compelling Reasons and Sentencing Commission Policy Statements**

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). The applicable Sentencing Commission policy statements are found in U.S.S.G. § 1B1.13, which recites the language of 18 U.S.C. § 3582(c)(1)(A) before it was amended in 2018, including that "the defendant is not a danger to the safety of any other person or to the community." The commentary to the policy statement provides four examples of what constitute "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C).

Defendant argues, and the Government concedes, that Gallman's medical conditions put him at heightened risk for suffering severe complications from COVID-19. *See* Government's Resp., ECF No. 189 at 15. Both parties agree that Defendant meets the "extraordinary and compelling reasons" threshold because of his kidney transplant in 1996 and prolonged use of corticosteroids. *Id.* In addition, he takes medications for hypertension, arthritis, and cholesterol.

Gallman's medical status is troubling amid a public health crisis. It is also true that Gallman is not a violent offender. He had no criminal history before beginning his fraud scheme in 2013. *See* Superseding Indictment, ECF No. 42.

Nevertheless, Gallman's actions suggest an early release would pose a meaningful threat to the community. A danger to the community need not be physical to weigh against a defendant's release. *See, e.g.*, *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000) (holding that the potential for witness tampering was a danger to the community sufficient to revoke bail in a fraud case, notwithstanding defendant's lack of a criminal record, threats, or violence); *see also United States v. Reynolds*, 956 F.2d 192, 192–93 (9th Cir. 1992) (finding that pecuniary and economic harms constitute a danger to the community in some situations).

Gallman's attempts to defraud taxpayers and evade responsibility did not end when he pleaded guilty in 2016 to charges of mail fraud, conspiracy to commit mail and wire fraud, aggravated identity theft, and conspiracy to commit money laundering. *See* ECF No. 110. After beginning his 132-month sentence, Gallman sent from prison frivolous and fraudulent filings to courts, the IRS, and county clerks on at least seventeen occasions from November 2017 to March 2019. Resp. at 3, ECF No. 189. For example, after receiving a notice of his missing tax returns for 2014, 2015, and 2016, Gallman mailed the IRS a 1099-OID in which he claimed to be withholding taxes of more than $19 million on behalf of the IRS employee who sent him the notice. Ex. B at 13, 24, 28, ECF No. 191. In addition, his email communications with his co-defendant brother, up to and including the time he filed his motion for compassionate release, demonstrate that he continues to espouse the same ideology regarding sovereign citizenship and legal trusts that formed the basis of his previous fraud, for which he has failed to take responsibility. *See* Government's Sur-reply at 8–9, ECF No. 195. For example, Gallman

encouraged his brother to invoke the Fifth Amendment's Takings Clause and to argue that they had been acting as trustees, not individuals, ahead of Eric Gallman filing a 62-page complaint demanding back the money they obtained as a result of their criminal activity. *See* Exs. O at 11–12, U, X-1, ECF 195.

Still, defense counsel argues that Gallman's ideology, however unusual, does not make him a threat to the public and is protected by the First Amendment. Def.'s Resp. to Sur-reply at 2, ECF No. 196. Further, defense counsel argues that Gallman's filings and communications are immaterial to this Court's analysis because the recipient agencies did not take action and no tangible harm resulted. *See id.* at 7; *see also* Def.'s Reply at 6–7, ECF. No. 192. It is true that Gallman has not been charged with any additional crimes stemming from his frivolous filings in prison. However, his post-sentencing behavior—charged or not—bears on whether he poses a continued economic danger to the community. *See, e.g.*, *United States v. Billups*, 685 F. App'x 286, 287 (4th Cir. 2017) (per curiam) (affirming an upward variant sentence based on "attempted fraud on the court, the seriousness of his prior criminal history, the danger he posed to the community, the continuing nature of his criminal conduct, and the 'lack of any indication of [defendant] making any affirmative efforts to accept responsibility'").

The threat of COVID-19 cannot be understated, as demonstrated by the more than 6,000 inmates and staff who have contracted the disease in close quarters at BOP facilities. *See* COVID-19 Cases, https://www.bop.gov/coronavirus (last visited June 15, 2020). Like other BOP facilities, however, the situation at Butner Medium I, where Gallman resides, has significantly improved in recent weeks. There were 20 inmates and 3 employees who tested positive, as well as 9 inmate deaths, according to the BOP's numbers as of June 14, 2020. *Id.* Yet 193 inmates and 27 employees have recovered. *Id.* Gallman has not caught the virus and was moved to a housing

7

unit with others who tested negative. Def.'s Reply at 4, ECF No. 192. Additionally, working in sales or at a local college—as Gallman stated he would aim to do upon release—could also expose him to COVID-19. Def.'s Mem. at 15, ECF No. 184.

Thus, although Gallman's medical conditions on their own could present "compelling and extraordinary reasons" under 18 U.S.C. § 3582(c)(1)(A), the economic danger he poses to the community and the improved situation at Butner weigh against modifying his sentence.

### C. Sentencing Factors in 18 U.S.C. § 3553(a)

A finding of "compelling and extraordinary reasons" is a necessary, but not sufficient, condition for compassionate release. This Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense."

Factors (1) and (2) are particularly relevant to Gallman's petition. Considerations for the latter—"the need for the sentence imposed"—include the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, and protecting the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2). Defendant stole more than $16 million from the IRS in a far-reaching scheme that involved bogus trusts, refund requests for taxes never paid, and attempts to hide his ill-gotten gains in shell companies and various properties. *See* Rearraignment, ECF No. 110. This Court imposed an obstruction-of-justice sentencing enhancement after Gallman lied to U.S. Probation about selling an overseas property

that he had purchased with proceeds from his fraud scheme. Ex. A at 63–64, ECF No. 191.

Gallman said in his allocution statement, "I accept the responsibility for the fraud, but that's not who I am." Government's Resp. at 2, ECF No. 189. Gallman's recent filings in this Court and elsewhere mark a substantial retreat from this expression of remorse and acceptance of responsibility. For instance, in a motion challenging his conviction under 28 U.S.C. § 2255, Gallman cast himself as a victim of entrapment and a multi-agency government conspiracy. Def.'s Petition at 4, 7, 19-cv-03389, ECF No. 1. Despite being ordered to return the $16 million, Gallman maintained that the *government* actually owes *him* and claimed his plea was involuntary. *Id.* at 9. As recently as April 2020, Gallman continued to ask to "be made completely whole restoring Defendant to position enjoyed before the indictment." Def.'s Mot. Summ. J., 19-cv-03389, ECF No. 9. It was only with this compassionate release motion pending, after speaking with his appointed counsel, that Gallman withdrew the § 2255 motion on June 8, 2020.

Gallman's about-face on responsibility and continued filing of fraudulent, nonsensical tax and financial documents demonstrate the remainder of his custodial sentence—itself below guidelines—is needed as a tool of specific deterrence. Defendant appears to have enlisted his mother in signing some of these baseless documents. *See, e.g.*, Ex. C, ECF 191. If Gallman were to be released, his post-sentencing conduct suggests that he easily could resume the same type of fraudulent activity. Here granting compassionate release would not promote respect for the law or protect the public.

Defense counsel argues that the sentencing factor in 18 U.S.C. § 3553(a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records," supports Gallman's motion, comparing him to Paul Manafort, the 2016 campaign chairman for President

Trump. Def.'s Resp. to Sur-reply at 3, ECF No. 196. Manafort was convicted in the Eastern District of Virginia of filing false tax returns, bank fraud, and failing to disclose a foreign bank account, and in the District of Columbia of conspiracy to defraud the United States and witness tampering. *See* Case Nos. 1:18-cr-00083-TSE (E.D. Va.), 1:17-00210-ABJ (D.D.C.). The BOP released Manafort to home detention. *See* Sadie Gurman, *Ex-Trump Campaign Chairman Paul Manafort Released From Prison to Home Confinement*, The Wall Street Journal (May 14, 2020), https://www.wsj.com/articles/ex-trump-campaign-chairman-paul-manafort-released-to-home-confinement-11589375414. Defense counsel argues that Manafort's crimes were more serious than Gallman's, that there were no cases of COVID-19 at the facility where Manafort was housed, that Manafort's reported health conditions were less serious than Gallman's, and therefore Gallman "should not be treated more harshly than a wealthier, more famous person who happened to have access to the most powerful people in the land." Def.'s Resp. to Sur-reply at 5, ECF No. 196.

      The case is distinguishable in that the BOP used its discretion to release Manafort, a 71-year-old with liver disease who was hospitalized for a heart condition last year and contracted bronchitis and influenza in February 2020, among other ailments. *See Letter from Kevin Downing to the Bureau of Prisons*, Courthouse News Service (April 14, 2020), https://www.courthousenews.com/wp-content/uploads/2020/04/manning-ltr.pdf. Still, the Court agrees that it is important to avoid sentencing disparities and that no person should be sentenced based on their wealth or connections, even to the President. But the BOP's decision to release Manafort cannot overcome the specific factual circumstances in this case that weigh against Gallman's release.

      All told, the § 3553(a) criteria, along with Gallman's economic danger to the community,

outweigh the otherwise compelling health reasons or sentencing disparities with Manafort or others for granting compassionate release.

## Conclusion

Gallman has committed serious financial crimes and has served only four years of an eleven-year sentence. During that time he has not taken responsibility for his actions and continued to make false tax filings. The Court recognizes the seriousness of the COVID-19 pandemic and the risks that Gallman faces based on his medical condition. Nonetheless, the economic danger he poses to the community and the sentencing factors under 18 U.S.C. § 3553(a) weigh strongly against a sentence reduction. Therefore, Gallman's motion for compassionate release is denied.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is this 22nd day of June 2020, hereby ORDERED that Defendants' Motion for Compassionate Release, ECF No. 180, is DENIED.

/S/
Paul W. Grimm
United States District Judge